UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DANIEL WILLIAM COX, JR.                                          PLAINTIFF

v.                                    CIVIL ACTION NO. 3:14-CV-00637-CRS

KENNY C. HOLBERT, ET AL.                                        DEFENDANTS

## MEMORANDUM OPINION

This is a case involving police officers allegedly violating Daniel William Cox, Jr.'s right to be free from excessive force. Cox has also alleged related claims under federal and Kentucky law. Ramon Pineroa, Michael Clark, Kenny C. Holbert, and Tyler Wright (collectively, the "Defendants"), separately move for summary judgment on all claims.

The Court will grant summary judgment in full to Pineroa, Clark, and Holbert. The Court will grant in part and deny in part Wright's motion for summary judgment. After ruling on these motions, Cox's excessive force, assault, and battery claims against Wright will remain.

## BACKGROUND

The following facts are presented in a light most favorable to Cox, the non-moving party.

On September 23, 2013, during the Nelson County Bourbon Festival, multiple officers responded to a disturbance at Xavier's Pub around 1:30 a.m. Ostensibly in response to this disturbance, the officers went through Mammy's Kitchen, a nearby restaurant to Xavier's owned by Cox's relative, to access Xavier's outdoor area. For reasons that are not at issue in this matter,

the officers arrested Cox's brother-in-law and father-in-law on Mammy's property instead of continuing to Xavier's. Cox Dep. 39, 48, ECF No. 35-1.

Cox was on Mammy's back patio when he saw these officers arrest his relatives. Cox had been drinking throughout the day. While the number of drinks is in dispute, he drank at least one per hour beginning at approximately 7:00 p.m. Cox admit he was frustrated that the officers arrested his family members instead of responding to the disturbance at Xavier's. He vocally made these frustrations known and his wife informed him they were going home. The couple headed toward Christopher Thomas, Cox's cousin who was their designated driver, and Thomas' car which was parked behind Mammy's and across an alleyway. His wife headed back toward Mammy's, and Cox continued toward Thomas. *Id.* 34, 39, 47.

As Cox walked toward Thomas, the cousin asked what had happened at Mammy's. Cox again complained that the officers wrongfully arrested family members while ignoring the real disturbance. "It was bullshit," he said, "[the officers] need to be after the Bardstown Money Gang instead of arresting people over stupid bullshit." *Id.* 55; *see also id.* 47, 50.

In the alleyway separating Mammy's patio area and a parking lot, Nelson County Sheriff's Deputy Ramon Pineroa stood near his police cruiser. Pineroa overhead Cox's comments and told him to "shut up" and "keep walking." *Id.* 50. Pineroa, without warning Cox, threw Cox on his marked police cruiser's trunk. Cox, unaware who threw him, broke free from Pineroa's grasp. Cox turned around and, realizing it was a law enforcement officer, put both his hands above his head. *Id.* 46, 51, 52, 55.

Without informing him why, Pineroa told Cox he was under arrest and to "shut up." *Id.* 57. Nelson County Sherriff's Deputy Michael Clark and New Haven Officer Kenny C. Holbert

then approached Cox and "pulled [his] hands down behind [his] back." *Id.* Clark held Cox's right arm while Clark held the left. During this time, Pineroa stood in front of Cox, whose back was against the police cruiser. Cox continued to question why he was being arrested. *Id.* 57 – 59.

Bardstown Police Officer Tyler Wright then approached Cox and, without warning, drive tasered him repeatedly in the stomach. Cox leaned forward to attempt to evade the taser. Cox alleges Holbert then pulled up on Cox's arm. The officers heard a loud pop and then let go of Cox. *Id.* 58 – 60, 63.

The officers called an ambulance for Cox, assuming his arm was broken. At the hospital, doctors determined Cox suffered a severe fracture to his left humeral shaft. *Id.* 63, 69.

## STANDARD

Before granting a motion for summary judgment, the Court must find that "there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The non-moving party must show that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

The Court will address each claim against each defendant individually.

1. Section 1983: Excessive Force

Section 1983 provides a private cause of action against anyone who, under color of state law, deprives an individual of rights, privileges, or immunities the Constitution or a federal statute secures. 42 U.S.C. § 1983.

However, under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotations omitted).

"To determine whether qualified immunity applies in a given case, we use a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and (2) we assess whether the right was clearly established at the time of the incident." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Coley v. Lucas Cty., Oh.*, 799 F.3d 530, 537 (6th Cir. 2015). Once qualified immunity is asserted, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 478 (6th Cir. 2014).

There is no dispute that Defendants acted under color of state law or that the right to be free from excessive force is a clearly established right – although Wright does argue that a separate right applies to his conduct in tasering Cox. Instead, Defendants argue that their actions did not constitute a constitutional violation, even when viewing the facts in the light most favorable to Cox.

The Fourth Amendment bars the use of excessive force against a free citizen in the process of being arrested or seized. *Id.* Under the Fourth Amendment, the court applies an objective reasonableness test. *Id.* This test assesses "reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Id.* The court balances "the nature and quality of the intrusion on [a plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 466–67 (6th Cir. 2006)). Three factors guide this analysis: "[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Burgess*, 735 F.3d at 472 – 73 (internal quotations and citations omitted) (brackets in original). "These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Id.* (citing *Graham*, 490 U.S. at 396 – 97).

a. *Excessive Force: Ramon Pineroa*

Pineroa argues that he is entitled to qualified immunity as he did not use excessive force against Cox when he threw Cox against the police cruiser. Cox does not respond to any of Pineroa's arguments. A plaintiff abandons a claim when the plaintiff fails to respond to a motion for summary judgment. *See, e.g.*, *Brown v. VHS of Mich., Inc,*. 545 Fed. App'x 368, 372 (6th Cir. 2013); *Hicks v. Concorde Career Coll.*, 449 Fed. App'x 484, 487 (6th Cir. 2011); *Phillips v. Ternes*, Civil Action No. 4:11–CV–00066–JHM (W.D. Ky. Aug. 28, 2014).

Cox's response is a consolidated response to three separate motions for summary judgment. In that response, he focuses on responding to Wright's and Holbert's motions. For example, in addressing the motions to dispose of his excessive force claims, Cox labels the section: "Viewing the facts in the light most favorable to Plaintiff Daniel Cox, a reasonable juror could conclude that *Defendants Holbert and Wright* exerted excessive force in their efforts to subdue and arrest Mr. Cox." Pl.'s Resp. 7, ECF No. 42 (emphasis added). This section concludes: "Accordingly, the Court must deny *Wright and Holbert's* motions for summary judgment on Daniel Cox's claim that they used excessive force against him." *Id.* 10 (emphasis added). Cox concludes his entire response with: "this Court should deny summary judgment on the Fourth Amendment claim of excessive use of force against Defendants *Wright and Holbert*, as well as the state law torts of assault and battery against these defendants." *Id.* 14 (emphasis added).

Beyond the heading and conclusions, the substance of Cox's response fails to address Pineroa's arguments. While Cox does briefly mention that Pineroa did not warn Cox prior to grabbing him, Cox does not integrate these facts into any coherent response to Pineroa's motion for summary judgment. The Court finds that Cox abandoned his excessive force claim against Pineroa.

The Court will grant Pineroa's motion for summary judgment on Cox's excessive force claim under Section 1983.

b. *Excessive Force: Michael Clark*

Clark argues that he is entitled to qualified immunity as he did not use excessive force against Cox when he secured Cox's right arm after witnessing the interaction between Cox and Pineroa. Cox does not respond to any of Clarks's arguments. For similar reasons as stated in the previous section, the Court finds Cox abandoned his excessive force claim against Clark.

The Court will grant Clark's motion for summary judgment on Cox's excessive force claim under Section 1983.

c. *Excessive Force: Kenny C. Holbert*

Holbert argues that he is entitled to qualified immunity as he did not use excessive force against Cox when he secured Cox's left arm after witnessing the interaction between Cox and Pineroa. The Court agrees.

Without knowing the details of Cox's interaction with Pineroa, Holbert saw Cox breakaway from Pineroa's grasp and throw his hands up. Holbert then secured Cox's left arm behind his back. Clark concurrently secured Cox's right arm. Cox Dep. 56 – 59.

Officers often make split-second judgments about the amount of force necessary in uncertain circumstances. *See Burgess*, 735 F.3d 472 – 73.

> Although the Fourth Amendment 'reasonableness' inquiry is largely fact-driven, summary judgment for defendant public servants founded in qualified immunity is nonetheless appropriate when the undisputed material facts, or the plaintiff's version of disputed material facts, demonstrate that a hypothetical reasonable officer would not have known that his actions, under the circumstances, were objectively unreasonable.

*Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000) (citing *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 – 03 (6th Cir. 1998)); *see also DeMerrell v. City of Cheboygan*, 206 Fed. Appx. 418, 423 (6th Cir. 2006).

7

Here, Holbert reacted to a fellow officer confronting an individual who had broken free and then raised his hands. A reasonable officer would likely infer that an arrest would follow, or at least an incident was unfolding where assistance could deescalate the situation. Taking into account the larger context of this encounter, which occurred after 1:30 a.m. during the county's bourbon festival and near multiple bars, Cox Dep. 36, a reasonable officer would assist in deescalating the situation through the use of minimal force. Holbert used this minimal force in restraining Cox by holding an arm behind his back.

The arrest did cause Cox's right arm fracture. However, arguing backwards from this outcome without more evidence does not lead to a finding that Holbert caused the injury, even when viewing the evidence most favorably to Cox. The facts suggest a different narrative: Holbert used minimal force in restraining Cox's left arm, but when Wright used his taser Cox reflexively attempted to avoid the shock. *Id.* 58 – 60. This does not mean that Holbert used *excessive* force. The Court must view the actions of officers individually and cannot impute Wright's tasering of Cox to Holbert.

The Court finds no genuine issue of material fact whether Holbert's actions were reasonable under the circumstances and he is entitled to qualified immunity.

The Court will grant Holbert's motion for summary judgment on Cox's excessive force claim under Section 1983.

d. *Excessive Force: Tyler Wright*

Wright argues that he is entitled to qualified immunity as he did not use excessive force against Cox when he tasered Cox. Wright drive tasered Cox while (1) Holbert and Clark held Cox's arms behind his back, (2) Cox's back was against a police cruiser, and (3) Pineroa stood

nearby. *Id.* Viewing the facts most favorably to Cox, there remains a genuine issue of material fact whether this constitutes excessive force in violation of the Fourth Amendment.

Wright argues that Cox was "hostile, belligerent, uncooperative, and actively and aggressively resisting his arrest." Wright Memo. Supp. Mot. Summ. J. 4, ECF No. 39-1. Wright does not substantiate the particular conduct that supports these conclusions. Although Wright relies on *Draper*, Wright does not, for example, allege that Cox "used profanity, moved around and paced in agitation, and repeatedly yelled at [the officer]," while also ignoring repeated requests to stop these activities prior to Wright tasering Cox. *Draper v. Reynolds,* 369 F.3d 1270 (11th Cir. 2004) (describing a traffic stop where a taser was used that did not constitute excessive force); *see also*, Wright Memo. Supp. Mot. Summ. J. 5 (suggesting similarities between this matter and *Draper*).

Instead, Wright heavily relies on the fact that a jury convicted Cox of resisting arrest. A resisting arrest conviction alone does not exonerate officers from use of excessive force. Viewing the facts most favorable to Cox, two officers already held Cox's arms and positioned him against a police cruiser while another officer stood in front of Cox. While resisting arrest often warrants use of force, the degree of permissible force is not unlimited. Viewing the facts most favorably to Cox, he did not pose a sufficient immediate threat to officers or the public as he was already physically restrained with officers surrounding him.

The Court finds there is a genuine issue of material fact whether Wright's actions were reasonable under the circumstances.

Wright also argues that the right at issue is not clearly established. "A government official's conduct violates clearly established law when, at the time of the challenged conduct,

the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal quotation omitted).

"The difficult part of this inquiry is identifying the level of generality at which the constitutional right must be clearly established." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). As repeatedly stated above, a law enforcement officer violates the Fourth Amendment by using excessive force. However, the scope of "clearly established law" is not defined "at a high level of generality." *al-Kidd*, 563 U.S. at 742. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* (internal citations omitted). "In other words, the fact that it is clear that any unreasonable use of force is unconstitutional does not mean that it is always clear which uses of force are unreasonable." *Casey*, 509 F.3d at 1284.

Following this guidance, the question Cox's allegations against Wright presents is whether an individual physically restrained by two officers (Holbert and Clark), pinned against a police cruiser, and located in front of another officer (Pideroa) had a clearly established right not to be tasered. Courts have routinely found that there was a clearly established constitutional right to be free from taserering after being detained or if there is no resistance to arrest. *See Cockrell*, 468 F. App'x at 496 (discussing cases finding such a right exists). This Court finds that such a right was clearly established. When Wright tasered Cox, multiple officers had already effectively immobilized Cox. At minimum, there is genuine issue of material fact whether Cox was resisting arrest *after* multiple officers restrained him to warrant Wright's use of his taser. Viewing the evidence in Cox's favor, there is adequate evidence to suggest Cox was no longer resisting arrest

as multiple officers physically restrained him before Wright tasered him. *See Burgess*, 735 F.3d at 472.

Wright also argues that Cox must present expert testimony to establish that Wright's use of a taser was inappropriate and unconstitutional. Wright's Mot. Summ. J. 7. If a matter at issue is beyond the purview of a lay witness, then an expert witness is generally required to prove a necessary element. *Cf.* FRE 701 – 02. "[E]xpert testimony does not assist where the jury has no need [ ] for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic." *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006) (quoting *United States v. Corey*, 207 F.3d 84, 97 n.11 (1st Cir. 2000)). However, whether an officer used excessive force that violates the Fourth Amendment is based on an objective reasonableness standard that is within the purview of a lay witness.

The Court will deny Wright's motion for summary judgment on Cox's excessive force claim under Section 1983.

2. Section 1983: Unlawful Arrest

Cox also alleges an unlawful arrest claim under Section 1983 against each defendant. Unlawful arrest occurs when an arrest lacks probable cause. S*ee United States v. Torres–Ramos*, 536 F.3d 542, 554 (6th Cir. 2008).

Under Kentucky law, "a criminal conviction may [in certain circumstances] be used for purposes of collateral estoppel in later civil proceedings." *Gossage v. Roberts*, 904 S.W.2d 246, 248 (Ky. Ct. App. 1995) (citing *Roberts v. Wilcox*, 805 S.W.2d 152 (Ky. Ct. App. 1991)). Estoppel is appropriate when a judgment in a former action estops re-litigation of those matter necessarily involved and decided in the previous action. *Id.*; *see also Walker v. City of Lebanon,*

*Ky.*, Civil Action No. 3:12-CV-855-H (W.D. Ky. Nov. 25, 2013). Here, a Kentucky jury convicted Cox of alcohol intoxication and resisting arrest, Cox Dep. 66 – 67, implying probable cause existed for the initial arrest.

Cox does not oppose Defendants' motions for summary judgment on these claims. A plaintiff abandons a claim when the plaintiff fails to respond to a motion for summary judgment. *See, e.g.*, *Brown*. 545 F. App'x at 372; *Hicks*, 449 F. App'x at 487; *Phillips*, Civil Action No. 4:11–CV–00066–JHM. The Court finds Cox abandoned his unlawful arrest claims.

The Court will grant summary judgment to all Defendants on Cox's unlawful arrest claims.

3. Inadequate Hiring, Training, Supervision, and Retention under Federal and State Law

Cox alleges constitutional and state law claims alleging inadequate hiring, training, supervision, and retention against "municipal defendants," which he defines as the Defendants in their official capacity. Am. Compl. 6, ECF No. 7. Defendants argue that Cox has failed to properly allege claims against any Defendants in their official capacity representing the municipal police departments, and, regardless of whether the Defendants are proper representatives, Cox has failed to disclose expert witnesses required to meet his burden of proof.

Cox does not respond to these arguments. A plaintiff abandons a claim when the plaintiff fails to respond to a motion for summary judgment. *See, e.g..* 545 F. App'x at 372; *Hicks*, 449 F. App'x at 487; *Phillips*, Civil Action No. 4:11–CV–00066–JHM.

The Court will grant Defendants' motion for summary judgment on Cox's inadequate hiring, training, supervision, and retention claims.

4. <u>Assault and Battery under State Law</u>

Cox alleges civil assault and battery claims under Kentucky law against each defendant. Defendants do not contest the merits of Cox's assault and battery claims. Instead, Defendants argue that the Court should decline to exercise supplemental jurisdiction because Cox failed to establish a cause of action under Section 1983. *See* Holbert Mot. Summ. J. 13; Pineroa & Clark Mot. Summ. J. 19; Wright Mot. Summ. J. 8.

Under 28 U.S.C. Section 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." However, the court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). When a court dismisses federal claims on the merits, whether to retain jurisdiction over remaining state law claims is within the court's discretion and is not mandatory. *See Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002); *Weeks v. Portage Ct'y Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000).

As explained above, the Court will dismiss all claims over which it has original jurisdiction involving defendants Holbert, Clark, and Pineroa. However, the Court will not dismiss the excessive force claims against Wright. As the Court will dismiss all other claims against defendants Holbert, Clark, and Pineroa, the Court will decline to exercise supplemental jurisdiction over Cox's state law assault and battery claims. But, as the Court will not dismiss claims under Section 1983 against Wright, it will maintain supplemental jurisdiction over Cox's state law assault and battery claims against Wright.

5. <u>Proof of Causation and Damages</u>

As the Court will dismiss claims against all other defendants, the Court will only consider Wright's argument that Cox failed to offer proof of causation and damages. Wright argues that because Cox has not disclosed any experts before the expert disclosure deadline, Cox will be unable to prove the required causation or damages for any claim.

First, a plaintiff may "allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Morrison v. Bd. Of Trustees of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) (internal quotation and citation omitted). Indeed, the Sixth Circuit has refused to even require a *de minimis* injury requirement for a Fourth Amendment excessive force claim. *See id.*

Furthermore, "expert testimony does not assist where the jury has no need [ ] for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic." *Churchwell*, 444 F.3d at 905 (quoting *Corey*, 207 F.3d at 97 n.11). Here, Cox has identified his treating physicians as possible witnesses, Cox Resp. 11, as well as provided copies of his medical records. *Id.* Moreover, there is no expert needed to establish Wright's tasering of Cox caused an injury. That a taser would cause harm may be decided by a jury in the exercise of its commonsense.

However, under Kentucky law "a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment." *Osborne v. Keeney*, 399 S.W.3d 1, 18 (Ky. 2012). Wright argues Cox has not identified any expert witnesses that could prove these damages. As Cox does have remaining claims for assault and

battery under Kentucky law and seeks emotional distress damages, Cox must identify expert witnesses to support these particular damages.

As Cox does not dispute that he has not provided a sufficient witness, the Court will grant Wright's motion to the extent that it moves for summary judgment on emotional distress damages for Cox's assault and battery claims under Kentucky law. The Court will deny Wright's motion in all other respects concerning the adequacy of proof of causation and damages.

6. Punitive Damages Entitlement

Wright argues Cox has not alleged sufficient facts to entitle a judgment for punitive damages. Wright's Mot. Summ. J. 10. Cox does not respond to these arguments. A plaintiff abandons a claim when the plaintiff fails to respond to a motion for summary judgment. *See, e.g..* 545 Fed. App'x at 372; *Hicks*, 449 Fed. App'x at 487; *Phillips*, Civil Action No. 4:11–CV–00066–JHM.

The Court will grant Cox's motion for summary judgment as to the availability of punitive damages.

## CONCLUSION

The Court will grant in part and deny in part the pending motions as follows:

- The Court will grant Defendants Pineroa and Clark's motion for summary judgment;
- The Court will grant Defendant Holbert's motion for summary judgment;
- The Court will decline supplemental jurisdiction of Cox's Kentucky law assault and battery claims against Pineroa, Clark, and Holbert;

15

- The Court will grant in part Defendant Wright's motion for summary judgment to the extent it concerns Cox's claims of unlawful arrest and inadequate hiring, training, supervision, and retention, as well as emotional distress and punitive damages;

- The Court will deny in part Defendant Wright's motion for summary judgment to the extent it concerns Cox's Section 1983 excessive force claim and state law claims of assault and battery.

The Court will enter a separate order in accordance with this opinion.

August 2, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**